IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

FILED
MAY 1 7 2013
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| WEST TEXAS NATIONAL BANK, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | MO-11-CV-086 |
| | § | |
| FEC HOLDINGS, LP, | § | |
| FEC MESQUITE, LP, | § | |
| L.R. (ROBIN) FRENCH III, JOHN D. | § | |
| MULLEN, JR., | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| FEC HOLDINGS, LP, and | § | |
| FEC MESQUITE, LP, | § | |
| Counter-Plaintiffs, | § | |
| | § | |
| v. | § | MO-11-CV-121 |
| | § | (Consolidated with Civil Action |
| WEST TEXAS NATIONAL BANK, | § | No.: MO: 11-CV-00086-RAJ) |
| CITY BANK TEXAS, KEITH MOORE, | § | |
| and TYLER MOORE, | § | |
| Counter-Defendants. | § | |

**MEMORANDUM OPINION GRANTING MOTION TO DISMISS OF
DEFENDANTS WEST TEXAS NATIONAL BANK AND KEITH MOORE
AND MEMORANDUM OPINION GRANTING CITY BANK
OF TEXAS AND TYLER MOORE'S MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM UNDER RULE 12(B)(6) OR ALTERNATIVELY
TO DISMISS FOR FAILURE TO PROPERLY PLEAD**

Before the Court are Plaintiffs FEC Holdings, LP and FEC Mesquite, LP's First Amended Complaint (Doc. No. 19, MO-11-CV-121), Motion to Dismiss of Defendants West Texas National Bank and Keith Moore (Doc. No. 12), City Bank of Texas and Tyler Moore's Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) or Alternatively to Dismiss for Failure to Properly Plead and Brief in Support (Doc. No. 15), Plaintiffs' Response to Defendants' Motions to Dismiss (Doc.

1

No. 20), Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Dismiss (Doc. No. 23), and Defendants, City Bank of Texas and Tyler Moore's Reply to Plaintiffs' Response to Defendants' Motion to Dismiss (Doc. No. 24). The Court held a hearing over the motions on April 29, 2013. At said hearing, the Court orally granted the motions. The Court now issues its memorandum opinion.

## BACKGROUND

### I. Procedural

Plaintiffs FEC Holdings, LP and FEC Mesquite filed suit against Defendants West Texas National Bank, City Bank of Texas, Keith Moore, and Tyler Moore on August 3, 2011, in the Southern District of Texas, Houston Division styled Cause No. H 11-2873. One day later, Plaintiff West Texas National Bank filed suit against Defendants FEC Holdings, LP, FEC Mesquite, LP, Lloyd R. French III, and John D. Mullen, Jr. on August 4, 2011, in the Western District of Texas, Midland-Odessa Division styled Cause No. MO-11-CV-86. On November 1, 2011, the Houston case—Cause No. H 11-2873— was transferred to the Western District of Texas, Midland-Odessa Division due to the agreed choice of forum clause in the loan agreement at issue entered into by FEC Holdings, LP and Western National Bank. On November 4, 2011, the Houston case was then assigned to this Court and styled Cause No. MO-11-CV-121. Thereafter, on January 25, 2012, the original Houston case—now Cause No. MO-11-CV-121—was consolidated with the original Midland case into Cause No. MO-11-CV-86.

### II. Factual

The facts listed here stem from the case that was originally filed in the Southern District of Texas, Houston Division. This case arises out of a series of loans Defendant West Texas National Bank ("WTNB") made to Plaintiffs FEC Holdings, LP and FEC Mesquite (collectively, "FEC") to

start up a pizza and entertainment company in Texas, Oklahoma, and Louisiana. First Am. Original Compl. ¶¶ 1, 11, Doc. 19. In 2006, FEC allege Defendant WTNB contacted FEC and requested a meeting to discuss the prospect of entering into a lending relationship regarding FEC's pizza entertainment company, which is similar to that of Mr. Gatti's Pizza. *Id.* ¶¶ 11, 12. Thereafter, Defendant WTNB provided financing to FEC and its subsidiaries in connection with opening the pizza restaurants. *Id.* ¶ 12. WTNB made the following loans to FEC:

（a）  December 25, 2006:   $ 3.5 million loan to FEC MacArthur OKC, LLC

（b）  July 27, 2007:        $ 3.6 million loan to FEC Lafayette, LLC

（c）  November 30, 2007:    $ 3.6 million loan to FEC El Paso, LP

（d）  February 11, 2008:    $ 3.6 million loan to FEC Mesquite

（e）  October 28, 2008:     $ 1.2 million loan to FEC.

*Id.*

After the first four loans were made, FEC alleges in February 2008, Defendant Keith Moore called FEC to discuss the loans. *Id.* ¶ 14. During their conversation, FEC maintains Keith Moore told FEC he wanted Defendant City Bank to participate in the loans that WTNB had already made to FEC. *Id.* FEC alleges Keith Moore stated that although WTNB was not at its lending limit, City Bank's participation would be required for the lending relationship to continue. *Id.* Later in 2008, FEC alleges City Bank would not agree to the terms of the loans—a floating interest rate with no floor—that FEC originally had with WTNB. *Id.* As a result, FEC claims Keith Moore presented City Bank's participation in the loans and the imposition of an interest rate floor as a mandate. *Id.* ¶ 15. Fearing that WTNB would refuse to continue the lending relationship, FEC asserts they were forced to agree to the new loan terms, and they executed a modified loan that was allegedly harmful

to them in June 2008. *Id.* FEC further claims Keith Moore, throughout the new loan negotiation period, failed to disclose that the loan officer at City Bank who would serve as overseer of City Bank's participation in the loans was his son, Defendant Tyler Moore. *Id.* ¶ 16.

After the loan modification, the Prime Rate continued to decline significantly. *Id.* ¶ 17. As a result of the interest rate floor imposed in the modified loan, FEC alleges they were forced to pay higher interest rates than would have been required under their original loan. *Id.* On March 8, 2010, FEC claims it was forced to place FEC Subsidiaries, with the exception of FEC Mesquite, in Chapter 11 bankruptcy proceedings. *Id.* ¶ 18. FEC states it actively sought investors and secured an interested investor. *Id.* When FEC presented WTNB with the proposed terms of the investor's participation, FEC alleges WTNB rejected the proposal without consideration and instructed FEC to find purchasers for all of the stores. *Id.* Thereafter, FEC closed four of its pizza stores. *Id.* FEC then claims a private equity group, the principals of which allegedly included WTNB's controlling owner and Keith Moore, financed the purchase of those four stores, as well as assets of the Mesquite and Sugarland stores, through the bankruptcy court by a Gatti's franchise operator from Austin, Texas. *Id.*

FEC filed suit on August 3, 2011, in the Southern District of Texas, Houston Division alleging the following causes of action against Defendants: (1) fraud, fraudulent inducement, and failure to disclose (WTNB and Keith Moore); (2) conspiracy to commit fraud; (3) violation of RICO: 18 U.S.C. § 1962(c); (4) violation of RICO: 18 U.S.C. § 1962(d) (conspiracy); and (5) unjust enrichment. Defendants filed motions to dismiss, pursuant to 12(b)(6), 12(b)(1), and 9(b), on September 6, 2011, and FEC then filed a First Amended Original Complaint on October 3, 2011. Defendants, in their reply to FEC's response and amended complaint, re-urged their motions to

4

dismiss. This case was then transferred to the Western District of Texas, Midland-Odessa Division on November 1, 2011. This Court will now address both motions to dismiss.

## STANDARDS OF REVIEW

### I. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to present, via motion, a defense for failure to state a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive dismissal, a plaintiff must plead specific facts that "state a claim to relief that is plausible on its face," not mere conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Id.* at 679. First, the court must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Legal conclusions "must be supported by factual allegations." *Id.*

Upon identifying the well-pleaded factual allegations, the court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II.     Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are "courts of limited jurisdiction, having only the authority endowed by the Constitution and that conferred by Congress." *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010) (internal quotes and citation omitted). A lawsuit must be dismissed for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Stiftung v. Plains Marketing, L.P.*, 603 F.3d 295, 297 (5th Cir. 2010) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The party seeking to litigate in federal court bears the burden of establishing subject matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *BarreraMontenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

## III.    Rule 9(b) Standard

The Federal Rules require that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *Id.* The Fifth Circuit interprets Rule 9(b) to require at minimum "specificity as to the

statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Williams v. WMXTechnologies, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (Rule 9(b) requires " 'the who, what, when, where, and how' to be laid out.") (citations omitted). A dismissal for failure to plead with particularity as required by Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

## DISCUSSION

### I. RICO VIOLATIONS

FEC has alleged RICO violations under 18 U.S.C. § 1962(c) and (d). Essentially, these subsections provide: (c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and (d) a person cannot conspire to violate subsections (a), (b), or (c). *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).

To plead a RICO claim under § 1962(c), FEC must allege "(1) a person who engages in (2) a pattern[1] of racketeering activity[2] (3) connected to the acquisition, establishment, conduct, or control

---

[1] A "pattern of racketeering activity" requires at least two acts of racketeering activity. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 231 n. 4 (5th Cir. 2003). Although at least two acts of racketeering are necessary to constitute a pattern, two acts may not be sufficient. *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1003 (S.D. Tex. 1995). To establish a pattern of racketeering activity, a plaintiff must show the racketeering predicates are related, and they amount to or pose a threat of continued criminal activity. *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir.1996) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To establish continuity, FEC must prove continuity of racketeering activity, or its threat. *Word of Faith*, 90 F.3d at 122.

[2] "Racketeering activity" is defined in § 1961(1) in terms of a list of state and federal crimes. *See* 18 U.S.C. § 1961(1); *Bonton*, 889 F.Supp. at 1001. It includes acts indictable under 18 U.S.C. §§ 1341, 1343, 1344, and 1951, relating to mail fraud, wire fraud, bank fraud, and extortion, respectively. *See* 18 U.S.C. § 1961(1)(B); *Whelan*, 319 F.3d at 231. The individual acts of "racketeering activity" are usually described as the "predicate offenses." *Bonton*,

of an enterprise." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988). Additionally, FEC must show that they were injured in their business or property by reason of the RICO violations. *See* 18 U.S.C. § 1964(c). Thus, FEC must also satisfy the elements of injury and causation. *See Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998). Further, in this case the requirements of Rule 9(b) are implicated because the predicate racketeering activities alleged are wire, mail, and bank fraud and extortion, which trigger the elevated pleading requirements. *See Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). Accordingly, FEC must plead their fraud-based RICO claims with particularity. *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 430 (5th Cir. 1990).

### A.  18 U.S.C. § 1962(c)

Here, FEC asserts the RICO enterprise or association-in-fact enterprise consists of Defendants WTNB, Keith Moore, City Bank, and Tyler Moore, through which the Defendants conducted a pattern of racketeering. FEC alleges Defendants conducted a scheme to force and/or compel borrowers of WTNB (like Plaintiffs) to agree to City Bank's participation in their loans from WTNB, with Tyler Moore serving as loan officer for City Bank's participation, and to agree to modified loan terms which were detrimental to the borrowers and beneficial to WTNB and to City Bank. FEC asserts Defendants engaged in the following fraud in furtherance of this scheme: (1) mail fraud by using the mail to transmit the necessary legal documents to accomplish the loan modifications; (2) wire fraud by requiring FEC to wire their interest payments to WTNB; (3) bank fraud by obtaining moneys and funds under the custody or control of a financial institution each time

---

889 F.Supp. at 1001.  Any act that does not fall within RICO's definition of predicate offenses is not "racketeering activity." *See Heden v. Hill*, 937 F.Supp. 1230, 1242 (S.D. Tex. 1996).

WTNB, for itself and acting on behalf of City Bank, received interest payments from FEC's account at another bank at rates which were higher than they would have been under FEC's original loan agreement with WTNB; and (4) extortion pursuant to Keith Moore's express and/or implied false representations that FEC was required to agree to City Bank's participation in the loans in order for FEC's lending relationship with WTNB to go forward. Thus, FEC alleges the racketeering activity or predicate acts for purposes of RICO are mail fraud, wire fraud, bank fraud, and extortion.

### 1. Predicate Acts

Defendants argue FEC has failed to sufficiently plead predicate acts to sustain its RICO claim. The Court agrees.

#### a. Mail and Wire Fraud

The elements of a properly pled mail fraud claim under 18 U.S.C. § 1341 are (1) Defendants' participation in some scheme or artifice to defraud, (2) the use of the mails "caused by" Defendants or someone associated with the scheme, and (3) the use of the mails for the purpose of executing the scheme. *See United States v. Davis*, 752 F.2d 963, 970 (5th Cir. 1985). The elements of a wire fraud claim under 18 U.S.C. § 1343 are the same as those for a mail fraud claim except the use of the wire must be interstate.[3] *See Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988).

"A RICO claim asserting mail fraud as a predicate act must allege how each specific act of mail fraud actually furthered the fraudulent scheme, who caused what to be mailed when, and how the mailing furthered the fraudulent scheme." *Bonton v. Archer Chrysler Plymouth, Inc.*, 889

---

[3] FEC's mail fraud and wired fraud allegations can be analyzed together because "[t]he Supreme Court has said that because the mail and wire fraud statutes share the same language in relevant part, the same analysis applies to each." *United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999) (citing *Carpenter v. United States*, 484 U.S. 19, 25 n. 6 (1987)).

9

F.Supp. 995, 1002 (S.D. Tex. 1995). As to scienter, "both RICO mail and wire fraud require evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

FEC pleads Defendants used the U.S. mail and/or wires to advance and/or further its fraudulent and extortionate scheme which resulted in City Bank sharing in and obtaining moneys and funds received by WTNB from FEC. Specifically, FEC pleads Defendants used the mail to transmit the necessary legal documents to accomplish the loan modifications and used the wires by requiring FEC to wire their interest payments to WTNB.

The Court finds the allegations are not pled with sufficient particularity to constitute the RICO predicate act of wire fraud or mail fraud. At a minimum, Rule 9(b) requires allegations of the particulars of "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." 5A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297 (3d ed. 2004); *see Keith v. Stoelting, Inc.*, 915 F.2d 996, 1000 (5th Cir. 1990). Allegations about conditions of the mind, such as Defendants' knowledge of the truth and intent to deceive, however, may be pleaded generally. Fed. R. Civ. P. 9(b).

The First Amended Original Complaint gives some specifics about discussions regarding the loans on the telephone. Misrepresentations, however, that occurred at a meeting do not constitute wire or mail fraud, 18 U.S.C.A. §§ 1341, 1343, and thus cannot constitute racketeering activity. *Id.* § 1961(1); *Tel-Phonic Services*, 975 F.2d at 1139. Further, as to the wire fraud, FEC failed to plead any of the wire transfers were interstate, and failed to plead the time, place and contents of a predicate act of wire fraud. Lastly, FEC does not plead how mailing the loan documents and

10

requiring interest payments over the wires constitutes a pattern of racketeering activity, or furthers a "recognizable scheme formed with specific intent to defraud," or presents a continued threat of criminal activity. *See Bonton*, 889 F.Supp. at 1003; *see also Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122–24 (5th Cir.1996) (no continuity where alleged predicate acts are part of a single, lawful endeavor).

### b. Bank Fraud

Fraud under § 1344 requires pleading the following: the knowing execution of or attempt to execute a scheme or artifice (1) to defraud a financial institution, or (2) to obtain any property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises. 18 U.S.C. § 1344; *see also United States v. Barakett*, 994 F.2d 1107, 1110 (5th Cir. 1993). "Although there is no prevailing case law in the Fifth Circuit, courts have consistently found that only financial institutions may claim bank fraud under 18 U.S.C. § 1344 as a predicate act for RICO purposes." *See Vanderbilt Mortg. and Fin., Inc. v. Flores*, 735 F.Supp.2d 679, 696–97 (S.D. Tex. 2010); *see also Bressner v. Ambroziak*, 379 F.3d 478, 482 (7th Cir.2004) (the bank fraud statutes are designed to protect banks, not bank customers). As FEC is not a financial institution, it may not allege a violation of 18 U.S.C. § 1344 as a RICO predicate. *Id.*

Alternatively, the Court finds FEC's allegations are not pled with sufficient particularity to constitute the RICO predicate act of bank fraud. FEC pleads Defendants committed bank fraud in violation of 18 U.S.C. § 1344 pursuant to WTNB and City Bank obtaining moneys and funds under the custody or control of a financial institution each time WTNB, for itself and acting on behalf of City Bank, received interest payments from FEC's account at another bank at rates which were higher than they would have been under FEC's original loan agreement with WTNB. This pleading

fails to plead the time, place and contents of a predicate act of bank fraud, and fails to plead any fraud against a financial institution.

### c. Extortion

Allegations of extortion under 18 U.S.C. § 1951 require FEC to plead Defendants in any way or degree obstructed, delayed, or affected commerce or the movement of any article or commodity in commerce, by robbery or extortion. 18 U.S.C. § 1951(1). The term "commerce" as defined by the statute means, "all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof." *Id.* § 1951(b)(3). Therefore, FEC must plead Defendants committed, or attempted or conspired to commit, a robbery or act of extortion that caused an interference with interstate commerce. *United States v. Robinson*, 119 F.3d 1205, 1212 (5th Cir. 1997); *United States v. Mann*, 493 F.3d 484, 494 (5th Cir. 2007).

FEC pleads Defendants committed extortion pursuant to Keith Moore's express and/or implied false representations that FEC was required to agree to City Bank's participation in the loans in order for FEC's lending relationship with WTNB to go forward. FEC, however, merely conclusorily pleads that the enterprise engaged in interstate commerce to accommodate its extortion scheme. First Am. Original Compl. ¶ 41. FEC clearly did not plead any facts that Defendants committed, or attempted or conspired to commit, an act of extortion that caused an interference with interstate commerce. As such, the Court finds FEC failed to meet the pleading requirements for stating a RICO claim with extortion as a predicate act.

### 2. Enterprise

Defendants also argue FEC's amended complaint fails to demonstrate the existence of an enterprise. Again, the Court agrees.

18 U.S.C. § 1961(4) states that an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Fifth Circuit has defined "enterprise" as "an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Williams*, 809 F.2d 1072, 1094 (5th Cir. 1987). In order to avoid dismissal for failure to state a claim, FEC must plead specific facts, not mere conclusory allegations, that establish the existence of an enterprise. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). The enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987). FEC must also plead specific facts that establish "an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure." *Elliott*, 867 F.2d at 881. The members of the organization "must function as a continuing unit, as shown by a decision making structure." *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988).

FEC has alleged an enterprise or association-in-fact enterprise—WTNB, Keith Moore, City Bank, and Tyler Moore—that conducted a scheme to force and/or compel borrowers of WTNB (like Plaintiffs) to agree to City Bank's participation in their loans from WTNB, with Tyler Moore serving as loan officer for City Bank's participation, and to agree to modified loan terms which were detrimental to the borrowers and beneficial to WTNB and to City Bank. FEC has failed to allege, however, that this enterprise has any organization or structure separate and apart from the pattern of racketeering activity. Nor has FEC alleged any facts to establish the continuity of the organization; FEC has merely made a conclusory statement it believes the enterprise has repeatedly committed the same or similar predicate offenses with respect to other borrowers of WTNB over a substantial

13

period of time and/or the predicates are a regular way of conducting Defendants' ongoing banking business. First Am. Original Compl. ¶ 40. The Court finds this is not sufficient to establish an enterprise nor an association-in-fact enterprise.

Taking FEC's facts as true, FEC has failed to plead sufficient predicate acts/racketeering activity, and has not established the existence of an enterprise. As such, FEC's claim under 18 U.S.C. § 1962(c) fails, and Defendants' motions are granted as to this claim.

### B.      18 U.S.C. § 1962(d) - conspiracy

Here, FEC also asserts Defendants conspired, in violation of 18 U.S.C. § 1962(d), to force FEC to agree to City Bank's participation in the Loans for the personal benefit of Keith Moore and/or Tyler Moore, and to extract more favorable terms by imposing an interest rate floor, and Defendants, by their words and/or actions, manifested an agreement to participate in the affairs of the enterprise through the commission of two or more predicate crimes as alleged above. "In order to demonstrate a RICO conspiracy under § 1962(d), [FEC] must demonstrate (1) that two or more people agreed to commit a substantive RICO offense and (2) that [Defendants] knew of and agreed to the overall objective of the RICO offense." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (internal citations omitted). "A person cannot be held liable for a RICO conspiracy merely by evidence that he associated with other ... conspirators or by evidence that places the defendant in a climate of activity that reeks of something foul. A conspirator must at least know of the conspiracy and adopt the goal of furthering or facilitating the criminal endeavor." *Id.* (internal citations and quotation marks omitted). Defendants argue that FEC's § 1962(d) claim should be dismissed because FEC failed to plead an actionable RICO claim under § 1962(c), and failed to sufficiently allege an agreement. The Court agrees.

"[B]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Tel-Phonic*, 975 F.2d at 1140. In *Crowe v. Henry*, the Fifth Circuit affirmed a Rule 12(b)(6) dismissal of mere conclusory allegations of the agreement upon which an alleged § 1962(b) RICO conspiracy was based. 43 F.3d 198, 205 (5th Cir.1995). Here, likewise, FEC conclusorily alleges, Defendants conspired and agreed to participate in the enterprise. However, nowhere does FEC allege facts implying any agreement to commit predicate acts of racketeering. Further, having found FEC failed to state a claim under 18 U.S.C. § 1962(c), FEC's claim under 18 U.S.C. § 1962(d) must also fail since its violation is predicated upon the violation of § 1962(c). *See* 18 U.S.C. § 1962(d). As such, even taking FEC's facts as true, FEC's claim under 18 U.S.C. § 1962(d) fails, and Defendants' motions are granted as to this claim.

## II.    STATE LAW CLAIMS

FEC has further alleged the following state law claims: (1) fraud, fraudulent inducement, and failure to disclose (WTNB and Keith Moore); (2) conspiracy to commit fraud; and (3) unjust enrichment. Defendants argue FEC's state law claims should be dismissed because FEC has not pled a viable RICO claim that could sustain federal question jurisdiction. The Court agrees.

In *United Mine Workers v. Gibbs*, the Supreme Court explained the extent of pendent jurisdiction, noting that the justification for pendent jurisdiction

> lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

15

383 U.S. 715, 726 (1966) (footnotes and citations omitted). The Supreme Court has not treated *Gibbs* as establishing a bright-line rule for pendent jurisdiction but has called for a more flexible analysis, balancing the values of economy, convenience, fairness, federalism, and comity. *See, e.g., Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n. 7 (1988) (citing *Rosado v. Wyman*, 397 U.S. 397, 403–05 (1970)). The *Carnegie-Mellon* Court did state, though, when the single federal-law claim is eliminated at an "early stage" of the litigation, the district court has "a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon*, 484 U.S. at 351. The Fifth Circuit's general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed. *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).

Above, the Court dismissed FEC's RICO claims; the only issues remaining are state law claims. As such, the Court will consider the factors outlined above in *Gibbs* in its decision regarding the remaining state law claims.

At this stage of the proceedings, judicial economy will be served by dismissal. It is true that some substantial discovery has occurred in this case. For example, a number of written discovery matters have been exchanged by the parties and depositions have begun. Nonetheless, the proceedings—motions to dismiss—are at a relatively early stage. *See Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 587 (5th Cir. 1992). The trial is scheduled for November 2013 and discovery has not been completed. In addition, the Court has conducted only two telephone status conferences. In any event, the Court is not yet so involved in the case that proceeding further in federal court will prevent redundancy and will conserve substantial judicial resources. *Id.* "Nor would it serve judicial economy to reward a plaintiff by allowing it into federal court when it pleads a baseless RICO suit." *Id.*

Further, dismissal will not cause undue inconvenience to the litigants. Little new legal research would be necessary, as the surviving claims are governed by state law, and any additional factual research would need to be conducted anyway. *See id.* Additionally, the most expensive element of the trial preparation—discovery—would be usable in any state proceeding.

The fairness factor concerns the prejudice to the parties that would arise from dismissal, and it too weighs in favor of dismissal. *Id.* at 588. Section 16.064(a) of the Texas Civil Practice and Remedies Code provides that the statute of limitations is tolled while a case is pending in a court that lacks jurisdiction. Although § 16.064(b) says that the tolling does not apply if the plaintiff filed its initial suit "with intentional disregard of proper jurisdiction," that should not be a problem here. Both parties have filed lawsuits against each other alleging RICO violations and the Court is dismissing both parties' RICO claims. Therefore, the Court does not see any party raising a statute of limitations defense in a state proceeding. Further, the parties would not have to repeat the effort and expense of the discovery process in the state proceeding. *See Waste Sys. v. Clean Land Air Water Corp.*, 683 F.2d 927, 931 (5th Cir. 1982) (fact that discovery could be used in state court proceeding weighs in favor of dismissal of case from federal court).

Lastly, dismissal would serve the important interests of federalism and comity. "The federal courts are courts of limited jurisdiction, and often are not as well equipped for determinations of state law as are state courts." *Parker & Parsley,* 972 F.2d at 588–89 (citation omitted). Aside from the state courts' superior familiarity with their respective jurisdictions' law, the federal courts' construction of state law can be "uncertain and ephemeral." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 122 n. 32 (1984). "[F]ederal courts are not the authorized expositors of state law; there is no mechanism by which their errors in such matters can be corrected on appeal by

state courts." *Parker & Parsley,* 972 F.2d at 589 (citations omitted); *see also United Gas Pipe Line Co. v. Ideal Cement Co.,* 369 U.S. 134, 135 (1962) (per curiam) (state court defines authoritative meaning of state law). In the instant case, the interests of federalism and comity point strongly toward dismissal as all of the remaining legal issues of the case are of state law.

Based on these factors and because this Court has dismissed all of FEC's federal claims, this Court declines to exercise jurisdiction over the pending state claims of FEC. *See Gibbs,* 383 U.S. at 726 (Because the federal claims were properly dismissed before trial, the Court can, in its discretion, dismiss the pendent state law claims as well.); *Parker & Parsley,* 972 F.2d at 590 (Held district court abused its discretion in retaining jurisdiction over the state law claims after it had dismissed the federal RICO claims.).

## CONCLUSION

Based on the above stated reasons and taking the facts pled as true, the Court finds FEC has failed to adequately plead its RICO claims. As such, the Court dismisses FEC's RICO claims, and declines to exercise jurisdiction over the remaining state law claims. Accordingly,

**IT IS ORDERED** that Motion to Dismiss of Defendants West Texas National Bank and Keith Moore (Doc. No. 12, MO-11-CV-121) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that City Bank of Texas and Tyler Moore's Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) or Alternatively to Dismiss for Failure to Properly Plead and Brief in Support (Doc. No. 15, MO-11-CV-121) is hereby **GRANTED**.

**IT IS SO ORDERED.**

Signed this 17 day of May, 2013.

*/s/ Robert Junell*
**ROBERT JUNELL**
United States District Judge
Western District of Texas